Day, J.
 

 The plaintiff in error, the Toledo, Fostoria & Findlay Railway Company, is an interurban traction line running from the city of Findlay, in Hancock county, Ohio, to and beyond the city of Fostoria, in said county of Seneca, Ohio, operating on Union street, a public highway leading north and south through the city of Fostoria, and extending north from such city; the plaintiff in error hereinafter being referred to as the traction company. The defendant in error is a steam railroad running from the city of Toledo, in Lucas county, Ohio, southward through the counties of Lucas, Wood, and Seneca, in the state of Ohio, and through the city of Fostoria, in said county of Seneca, and will be referred to as the railroad company.
 

 In the year 1905, in the construction of its line, the traction company desired to cross at grade,
 
 outside
 
 the city limits of the municipality of Fos
 
 *100
 
 toria, Ohio, the tracks of the railroad company. Not being able to agree as to the expense of the construction of such grade crossing pursuant to Sections 8834 and 8836, General Code, the terms and conditions were fixed by the common pleas court of Seneca county; the entire cost and expense of installation and maintenance of the crossing-being assessed against the traction company. Upon appeal to the circuit court of that county, it was by that court, on July 18, 1912, adjudged as follows:
 

 “It is further ordered and adjudged that the applicant, the Toledo, Fostoria & Findlay Railway Company, at its own expense, shall keep and maintain said grade crossing at
 
 all times
 
 in a good and safe condition and in repair, and suitable and safe for the purposes for which it is to be used, and shall maintain and keep, in good condition, the grade of its tracks on a level with the tracks of the Toledo & Ohio Central Railway Company for 200 feet on each side of the point of intersection of the tracks of said companies.
 

 “It is further ordered and adjudged that the said applicant, the Toledo, Fostoria & Findlay Railway Company, shall bear all the expense of installation, maintenance, and repair of the said grade crossing and approaches thereto.”
 

 Subsequently, to wit, July 19, 1917, the city council of Fostoria passed an ordinance by which the territory wherein was located the crossing in question was taken into the city limits of the municipality. The traction company claims that the crossing since that date being within the city
 
 *101
 
 limits of Fostoria, the expense of maintenance of the same is controlled by Section 3775, General Code, which in part is as follows:
 

 “When the tracks of two street railroads, or of a street railroad and steam railroad, cross each other at a convenient grade on a street, the crossings shall be made with crossing frogs of the most approved pattern and materials, and kept up and in repair at the joint expense of the companies owning such tracks.”
 

 -The question then arises, does Section 3775, General Code, control, or is the order of the circuit court made in 1912 decisive of the relative rights of the parties hereto?
 

 The answer to the problem depends upon whether such new conditions and changed facts intervene as may alter the legal rights or relations of the parties.
 

 It must be conceded that, so far as the purely physical conditions are concerned, the same situation prevails today as existed when the circuit court rendered its decision. The same provisions of law (Sections 3775, 8834 and 8836) are in the General Code today as were there in 1912, the date of the circuit court holding fixing the relative rights and obligations of the parties. That court might have determined that the expense of maintenance be borne by both parties equally, had it seen fit so to do, even though at that time the crossing was outside the city and Section 3775 had no application as far as location was concerned.
 

 Does the fact that the city limits of Fostoria have been enlarged, so as to include this territory,
 
 *102
 
 with no change in the physical conditions, make a new set of facts or new law that renders the decree of 1912 of no effect?
 

 If the ordinance had ordered a new crossing, creating a new condition, as for instance the abolition of a grade crossing, or some similar exercise of the police power, the situation might be different. Here, however, it is sought with no change of law or fact, except the enlargement of the city boundaries, to nullify the adjudication of the circuit court concerning a matter of which it had full jurisdiction between the same parties on the same subject-matter, and, by thus enlarging the boundaries of the city, make effective a statute which had no application when the order was made. Unless there was some changed conditions whereby the legal relations of the parties were changed from those existing in 1912, when the circuit court rendered its decision, we are of opinion that such superseding of the adjudication of the circuit court would not be valid. In other words, we deny the right of the city council as a legislative body to supersede a judgment of a court, regularly and legally rendered between the same parties on the same subject-matter, unless there is a changed condition of facts or law which creates such a changed situation or imposes such additional burdens as to prevent the doctrine of
 
 res judicata
 
 from applying.
 

 The situation is similar to a contract proposed between two parties who are not able to agree upon the consideration, whereupon by mutual agreement the same is fixed by a third party (the court,
 
 *103
 
 by statutory enactment). After being so fixed, the same becomes a part of the contract between the parties, and both are bound thereby.
 

 In this case the original issue was, Who shall pay the cost of constructing and maintaining this crossing; and, in what proportions, if the cost was to be divided? That question was determined by the circuit court in 1912.
 

 Now, in the case at bar, it is the same issue between the same parties upon the same subject-matter, although arising in a somewhat different form. The ordinance taking the location into the city limits did not change the facts, as considered by the circuit court, nor did it alter the legal relations of the parties as they were found to exist by the circuit court when it rendered its decree. Each party had acquired fixed and definite rights under that decree, and had entered into possession and enjoyment thereof for many years prior to the passage of the ordinance in question. To that extent, therefore, these rights of the respective parties have become vested.
 

 The effect of the alteration and extension of the boundaries of a municipality upon vested rights has heretofore been considered in this state.
 

 In the case of
 
 Belle
 
 v.
 
 City of Glenville and Cleveland Electric Ry. Co.,
 
 5 Ohio Cir. Ct. R., (N. S.), page 461, it was held:
 

 “The validity of a grant for a street railway route made by county commissioners through unincorporated territory is not affected by the subsequent annexation of such territory to a municipality.”
 

 
 *104
 
 This case was affirmed without report in
 
 73
 
 Ohio St., 392, 397, 78 N. E., 1117.
 

 In 47 L. R. A., (N. S.), page 607, in a discussion of the subject of incorporation of territory into a municipality as affecting prior rights to the use of the highway, the holdings in the following cases are set forth, at page 609:
 

 “In
 
 Westport
 
 v.
 
 Mulholland,
 
 159 Mo., 86, 53 L. R. A., 442, 60 S. W., 77, affirming 84 Mo. App., 319, where a street railway company had obtained from the county the right to construct and maintain its tracks upon a highway which was afterward taken into the complainant city, it was held that the city could not, by ordinance, deprive the railroad • company of its franchise, or impair its contracts with the county authorities. [The court, however, held that these rights of the corporations must be exercised subject to reasonable police regulations prescribed by the city.] So, in
 
 Jersey City, H. & P. Street R. Co.
 
 v.
 
 Garfield,
 
 68 N. J. L., 587, 53 A., 11, where a township committee had granted the right to construct and maintain an electric railway, it was held that a municipal corporation which was formed out of a part of the territory of the township could not revoke the franchise granted by the older municipality; it being said that the relation arising from the acceptance thereof could not be abrogated by the legislative fiat of the new incorporation. And in
 
 Johnson
 
 v.
 
 Owensboro & N. R. Co.,
 
 18 Ky. Law Rep., 276, 36 S. W., 8, it was held that a municipal corporation did not, by reason of the fact that an extension of a city street was brought within the city limits, acquire a right to compel a rail
 
 *105
 
 road company, which by act of the Legislature operated its road over such street, to remove its track from the street extension upon the failure of the company to comply with the terms upon which it was permitted to use that part of the street originally within the city limits.”
 

 In the latter case,
 
 Johnson
 
 v.
 
 Owensboro & N. R. Co., supra,
 
 the court says at page 278:
 

 “But we hold that whatever power and authority the common council had over the streets of the city, conferred by its act of incorporation, it had no power, by the passage of the ordinances referred to, to interfere with rights which had vested in the company before the extension of the city limits, and which rights were not derived, either directly or indirectly, from the city or its government.”
 

 We are cited by plaintiff in error to 2 Freeman on Judgments (5th Ed.), Sections 712-713, treating of the general principles applicable to changed conditions and law that will prevent a judgment from operating as an estoppel; our attention being especially directed to the following excerpt, quoted .by the author from 23 Cyc., 1161:
 

 “The estoppel of a judgment extends only to the facts as they were at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts so determined; and, when new facts intervene before the second suit, furnishing a new basis for the claims and defenses of the parties, respectively, the issues are no longer the same, and consequently the former judgment cannot be pleaded in bar.”
 

 
 *106
 
 An examination of the cases cited by the author in support of the text above quoted discloses the following state of facts:
 

 In
 
 Marks
 
 v.
 
 Stevens,
 
 72 Okl., 186, 179 P., 7, there was an action on a note and mortgage executed to secure the note, specifically setting forth a purported indorsement of the note and assignment of the mortgage by the original payee, whose signatures were shown to have been made by mark, hut were defective, because not witnessed and attested as required by law. The court dismissed the action, whereupon the plaintiff after-wards procured indorsement and assignment, duly executed according to law, and brought a new action setting up his right to relief based on the after-acquired indorsement and assignment. It was held that these facts constituted a different cause of action, and the dismissal of the former case was not
 
 res judicata
 
 as to the new cause of action.
 

 In
 
 In re Pomeroy,
 
 the second case cited in support of the text, found in 51 Mont., 119, 151 P., 333, there was an action brought to recover from the state an amount turned over to it as an escheat, and it was held that there existed no statutory provision whereby a citizen could obtain such relief. Afterwards an act of the Legislature was passed amending the section under which the original action was brought, by providing that, at any time before July, 1895, any person claiming property paid into the treasury as escheated should have one year after its enactment to petition for its recovery. The bar of estoppel by judgment was denied, there being no identity of issues, and the former judgment was held not to be
 
 res judicata.
 

 
 *107
 
 Neither of these cases presents such a situation as disclosed by this record, nor does an examination of other cases cited in the text of the learned author, above quoted show such a similarity of facts as to warrant an acceptance of the same as decisive of the questions presented in the case at bar, even though the law is correctly stated as supported by the cases therein cited.
 

 This principle, that a legislative body cannot annul a judgment of a court, or impair the rights determined thereby, in matters in which the public interests are not involved, unless it be under new facts, circumstances, or law, has been recognized by the Supreme Court of the United States in
 
 State of Pennsylvania
 
 v.
 
 Wheeling & Belmont Bridge Co.,
 
 18 How., 421, 15 L. Ed., 435, and in
 
 United States
 
 v.
 
 Aakervik,
 
 (D. C.), 180 F., 137.
 

 This court, in
 
 Cotven, State Highivay Commissioner,
 
 v.
 
 State ex rel. Donovan, a Taxpayer,
 
 101 Ohio St., 387, 129 N. E., 719, held that an act of the General Assembly could not cure defects in the letting of a contract, which by final judgment of the Court of Appeals had been held illegal and further proceedings thereunder enjoined, nor would such enactment authorize this court to reverse the judgment of the Court of Appeals so rendered before the passage of such act, although the act went into effect before the case was heard in this court and after certification of the record of the Court of Appeals.
 

 Entertaining the view that the principle of
 
 res judicata
 
 applies in the case at bar, and that the relations between the parties were the same as if entered into under a contract bearing the stamp of
 
 *108
 
 the solemnity of the judgment of a court, we are of opinion that an ordinance of a municipality cannot supersede the same by invoking some statute not applicable when the judgment was rendered, in the absence of new conditions whereby the legal relations of the parties are changed, which, in the present record, we do not find to exist.
 

 The judgment of the Court of Appeals will therefore be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Allen and Kinkade, JJ., concur.
 

 Robinson, J., concurs in the syllabus, but not in the judgment.